CONRAD RENO *vs.* JAMES E. COTTER & others.

Hampden.    September 23, 1920. — January 3, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Equity Pleading and Practice*, Report, Appeal, Decree, Bill, Amendment. *Superior Court. Jurisdiction. Equity Jurisdiction*, Accounting, To reach and apply assets not attachable at law.

Where, after having attempted to report a suit in equity upon the bill and a demurrer without making any ruling as to the demurrer, a judge of the Superior Court files a second report in which he states that he "made an order sustaining" the demurrer and reports that ruling to this court for determination, the

second report must be taken to have revoked and superseded the first, although it did not expressly so state.

Upon an appeal, without a report of evidence, from an order by a judge of the Superior Court, which denied a motion of the plaintiff in a suit in equity to discharge a report to this court, filed more than one and one half years before by another judge, of a ruling sustaining a demurrer to the original bill and also denied a motion by the plaintiff to amend his bill and allowed motions of the defendant to discharge the report and that judgment be entered for the defendant, the order, so far as it involves a finding of fact, must stand.

*It seems,* that a decision in writing, signed by a judge of the Superior Court, stating that he allowed a motion of the defendant in a suit in equity that a report to this court by another judge of a ruling sustaining a demurrer to the bill be discharged, may be treated as an interlocutory decree.

The failure of the plaintiff in a suit in equity for a year and one half to enter in this court a report by a judge of the Superior Court of a ruling sustaining a demurrer to the bill is abundant reason for allowing a motion by the defendant that the report be discharged.

Upon an appeal in a suit in equity from a final decree which, besides dismissing the bill, included several matters which already had been the subject of interlocutory orders and decrees, the correctness of the disposition made of such interlocutory matters is open for consideration.

A judge of the Superior Court who heard a demurrer to a bill in equity filed a report to this court in which he stated that he sustained the demurrer, but no formal decree to that effect was entered. A motion by the defendant that the report be discharged for failure of the plaintiff to enter it in this court was allowed a year and a half later. Subsequently a motion by the defendant for the entry of a formal decree sustaining the demurrer on the ground that the matter already had been decided by the first judge was allowed by a second judge as of the date of the filing of the report by the first judge. Upon an appeal from such decree, where the record did not include a report of evidence, it was *held,* that

(1) It was not essential that the motion be decided by the same judge who filed the report;

(2) Although the report was discharged, it was proper to resort to it for any rightful purpose;

(3) The statement in the report by the first judge that he had made an order sustaining the demurrer was a sufficient foundation for the subsequent entry, *nunc pro tunc,* upon the order of the second judge, of an interlocutory decree to that effect;

(4) So far as the decree included a recital of facts, it must stand, no evidence being reported;

(5) So far as the decree included a ruling of law, it was within the jurisdiction and power of the court and was warranted.

Where a judge of the Superior Court files a report in a suit in equity reciting that he had made an order sustaining a demurrer to the bill, but it appears that he had not formally entered such an order, and later, by order of another judge, an interlocutory decree sustaining the demurrer is entered as of the date of the filing of the report by the first judge, a motion of the plaintiff that the report be discharged on the ground that there was no ground for the report because when it was filed the judge had not made an order sustaining the demurrer, properly may be denied.

The allegations of a bill in equity by an attorney at law against two other attorneys and a third defendant were that the plaintiff and one defendant entered into a business arrangement, not a partnership agreement, for the practice of law, whereby the plaintiff was to receive a percentage of fees received by that defendant, and there were recited a number of specific matters of litigation which were subject to the arrangement. There also were allegations that, without a definite arrangement as to compensation, the plaintiff rendered valuable services to both the defendants who were attorneys at law in connection with other litigation for the third defendant; and there were paragraphs appropriate to a bill to reach and apply to the payment of sums alleged to be due to the plaintiff property of the defendant attorneys in the hands of their client. *Held*, that the bill was founded upon distinct and separate causes of action which had no connection with each other, and was multifarious; and that demurrers thereto on that ground should be sustained.

The disposition of a motion to amend a bill in equity rests in the sound judicial discretion of the court.

The disposition of a motion of the plaintiff, in the suit above described, to strike out the client as a party defendant and to divide the bill, leaving in only allegations applicable to a joint claim against the two defendants who were attorneys at law, lies in the sound judicial discretion of the court.

The proper office of a supplemental bill in equity is to support a ground of suit, existing when the original bill was filed, by facts occurring since the filing of the original bill and coming to the knowledge of the plaintiff subsequent thereto.

BILL IN EQUITY, filed in the Superior Court on February 11, 1915, against James E. Cotter, James W. McDonald and William J. Lowrie for accountings by the defendant Cotter and by the defendant McDonald for sums alleged to be due from each of them to the plaintiff by reason of payments made to them for professional services rendered by them and the plaintiff in matters described in the opinion, and to reach and apply, in payment of amounts found due on such accountings, certain alleged rights of the defendants Cotter and McDonald arising out of litigation carried on by them for the benefit of the defendant Lowrie. The allegations of the bill are more particularly described in the opinion.

The suit was heard in successive stages in the Superior Court by *King, Fox, Wait, J. F. Brown, N. P. Brown, & Lawton,* JJ., respectively. The proceedings are described in the opinion. From a final decree ordering, among other things, that the bill be dismissed, the plaintiff appealed.

The case was submitted on briefs.

*C. Reno,* pro se.

*J. P. Fagan & J. W. McDonald,* for the defendants Cotter and McDonald.

RUGG, C. J.   This suit in equity was filed on February 11, 1915. The record is confused and it is necessary to. state it in some detail.  The defendants Cotter and McDonald, who hereafter will be called the defendants, filed separate demurrers.   These were heard and on November 9, 1915, without deciding the demurrers, the judge filed what is in form a report to this court of the questions thereby raised.   On March 4, 1916, another report was filed by the same judge, wherein it was stated that he "made an order sustaining the demurrers," and then reported the correctness of his rulings upon certain stipulations.   The first report did not conform to R. L. c. 159, § 27, as to reporting interlocutory matters in equity.   Doubt well may have arisen in the mind of the judge as to his power to report a demurrer in equity without first deciding it, and hence the second report was made, which on its face showed a decision upon the demurrers.   It must be assumed that the first report was in effect superseded by the second, which is more full and conforms to R. L. c. 159, § 27.   Two reports cannot be made rightly of the same question and both be outstanding at the same time.   By making the second report the first was revoked even though not expressly so stated.   On July 24, 1917, the plaintiff filed a motion to amend his complaint, and on July 30 a motion to discharge the reports.   On September 11, 1917, more than one and one half years after the filing of the last report, each defendant filed a motion to discharge the reports for failure seasonably to enter them in the Supreme Judicial Court and for an order affirming the order sustaining the demurrers and for judgment thereon.   These three motions were heard together by another judge.   In February, 1918, his decision was filed.   In it, after denying the plaintiff's motions and after making a finding that no action had been taken looking to the entry of the report in this court, he allowed the defendants' motions that the report be discharged and that judgment be entered for the defendants upon the order sustaining the demurrers.   So far as that decision involved a finding of fact, it must stand as final on familiar principles, since no evidence is reported.

No formal decree was entered by this judge pursuant to his decision.   He filed, however, a signed statement or decision to the effect among other matters that the defendants' motions that the report be discharged were allowed.   There is authority to the

effect that an order of this nature is equivalent to an interlocutory decree. *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, and cases collected at page 33. In connection with the entry of the final decree expressly discharging the report, the report is deprived of any efficacy to bring the case here.

It is plain that the report was discharged rightly, and that neither report is now before us. The lapse of so long a time without action by the plaintiff to enter the report was abundant reason for discharging it. *Griffin* v. *Griffin,* 222 Mass. 218.

It follows that the case is not before us on report.

Numerous motions by each of the parties are printed in the record, together with the decisions of the several judges who made them. No appeal, however, was taken from any interlocutory order or decree. A final decree dismissing the bill was entered, from which the plaintiff appealed. The case never has been referred to a master nor heard on its merits. Hence no facts are found. No evidence concerning any interlocutory matter is printed.

The final decree includes numerous matters which had been the subject of interlocutory orders and decrees. These matters included in the final decree are open for consideration. Interlocutory decrees, not appealed from, are open to revision only to the extent that the final decree is affected thereby. R. L. c. 159, § 26. *Houle* v. *Abramson,* 210 Mass. 83, 84. *Fay* v. *Corbett,* 233 Mass. 403, 410.

A motion was filed by the defendants on May 11, 1918, that an order be entered as of a date prior to March 4, 1916, sustaining the defendants' demurrers on the ground that by mistake or oversight an order to that effect did not formally appear of record, although from the report of the judge filed on March 4, 1916, it was apparent that such an order actually was made. This motion was heard by a third judge. He allowed the motion and a decree *nunc pro tunc* was entered accordingly. It was not essential that this motion be decided by the same judge who made the report. Proper practice permitted it to be heard by a different judge. The Superior Court is a court of general jurisdiction. The case was pending in the Superior Court. Any judge of that court sitting for the judicial administration of justice had power to take cognizance of any motion or other matter pending for decision. *Catheron* v. *County of Suffolk,* 227 Mass. 598, 602. These motions

were not like a bill of exceptions, motion for new trial, or other step in procedure requiring the personal attention of a particular judge because begun and remaining uncompleted by him. *Brooks v. Shaw,* 197 Mass. 376.

The reports, although discharged and hence of no effect so far as concerns bringing before this court for decision the questions there set forth, were still on the files of the Superior Court, to which resort could be had for any rightful purpose. A report of this kind in equity recognized by the statute becomes a part of the record. *Stone v. St. Louis Stamping Co.* 156 Mass. 598. It is not necessary to determine whether under these circumstances resort might be had to a finding of facts or amplified decision filed by the judge in an action at law which, speaking strictly, are not part of the record. See *Cressey v. Cressey,* 213 Mass. 191; *Crocker v. United States,* 240 U. S. 74, 78, and *Parker v. Framingham,* 8 Met. 260, 264. It is apparent from the terms of the report dated March 4, 1916, that the judge signing it had made an order sustaining the demurrers. It is expressly so stated. Such an order might have been oral with the expectation that it would be entered on the docket. It should have been made by an interlocutory decree or separate order. But it was stated in a writing signed by the judge, which was sufficient foundation for the subsequent entry of an interlocutory decree embodying its substance.

The interlocutory decree, reciting that it appeared that an order sustaining the demurrers had been made by the first judge, which by mistake or oversight did not formally appear upon the records, and sustaining the demurrers as of March 3, 1916, so far as it involved a finding of fact, must stand since no evidence is reported. So far as it involves a ruling of law, it was right on the facts recited because it simply made the record of the court conform to the truth. The power of the court was ample in this particular. *Waucantuck Mills v. Magee Carpet Co.* 225 Mass. 31, 33. *Randall v. Peerless Motor Car Co.* 212 Mass. 352, 387. *Farris v. St. Paul's Baptist Church,* 220 Mass. 356. *Maggelet's Case,* 228 Mass. 57, 63. *Hathaway v. Congregation Ohab Shalom,* 216 Mass. 539, 542.

It was within the jurisdiction of the court to enter *nunc pro tunc* the interlocutory decree sustaining the demurrers. *Perkins v. Perkins,* 225 Mass. 392.

The denial of the motion of the plaintiff to set aside this decree and the proceedings antecedent to it presents no question of law.

The result is that as the record stands, as matter of correct practice, the demurrers have been sustained by an interlocutory order. The demurrers were sustained also in the final decree. The name of the judge who ordered the final decree to be entered is not stated explicitly, but apparently was a fourth judge. As has been pointed out, it is of no consequence whether he was the same one who first ordered that the demurrers be sustained or a different one.

The plaintiff contends that his motion to discharge the report ought to have been granted on the ground that there had been no order of the first judge sustaining the demurrers, and hence no ground for report. Whatever might have been the merit of this contention if no other motions had been pending, it is plain that, after the disposition of the motions of the defendants to which reference has just been made, the plaintiff's motion was denied rightly.

The denial of the plaintiff's motion to amend and then dismiss the report on February 20, 1919, presents no question of law.

We proceed to consider the merits of the demurrers. In one paragraph of the bill there is set out in substance a business arrangement entered into between the plaintiff and the defendant Cotter for the joint practice of the law. No partnership is alleged, for there was to be no division of expenses or losses. The plaintiff was to receive simply a percentage on fees received by Cotter. A number of cases are enumerated as being subject to this arrangement, on which the plaintiff is entitled to a division of fees. In other paragraphs of the bill it is alleged in considerable detail that without a definite arrangement as to compensation the plaintiff rendered valuable services to both defendants in connection with specified litigation with paragraphs appropriate to a bill to reach and apply property in the hands of their client.

It thus appears that several claims are alleged to be against the defendant Cotter alone, and that one claim is alleged against both the defendants. There is no allegation that the two defendants are partners or have any joint relation except in connection with the one litigation. Thus the bill is founded upon entirely distinct and separate causes of action, which have no connection with each other. It joins as defendants two persons, one of whom has no

relation whatever to the important claims of the plaintiff alleged against the other defendant. There is nothing about the several matters alleged in the bill which shows that they should be tried together or which overcomes the natural inference that they ought not to be tried together. No fiduciary relations are set out. No fraud is averred, an element which often binds together apparently diverse subjects. *Hutchins* v. *Nickerson,* 212 Mass. 118, 122. The causes of action against the defendant Cotter and that against both defendants seem to be appropriate subjects for several actions at law. While there is no inflexible rule as to what constitutes multifariousness, and each case must depend largely on its own circumstances, the case at bar plainly is open to that objection. The demurrers were rightly sustained. *Davis* v. *Peabody,* 170 Mass. 397. *Mesisco* v. *Giuliano,* 190 Mass. 352. *Saltman* v. *Nesson,* 201 Mass. 534, 539. *Sylvester* v. *Boyd,* 166 Mass. 445. *Keith* v. *Keith,* 143 Mass. 262. *Ricker* v. *Brooks,* 155 Mass. 400. The case at bar is distinguishable from cases like *Coram* v. *Davis,* 209 Mass. 229, *Lovejoy* v. *Bailey,* 214 Mass. 134, 151, and *Garden Cemetery Corp.* v. *Baker,* 218 Mass. 339, 342.

The question whether the motions of the plaintiff to amend his bill should be allowed rested in sound judicial discretion. There is nothing on this record to show abuse of that discretion in denying them. *Merchants' Bank of Newburyport* v. *Stevenson,* 7 Allen, 489, 491. *Tufts* v. *Waxman,* 181 Mass. 120. *Drew* v. *Beard,* 107 Mass. 64, 76.

The plaintiff's motion to divide his bill by including in this suit only allegations applicable to a claim against the defendants Cotter and McDonald jointly, and by filing a new bill against Cotter alone as of the date of the commencement of this suit and to strike out Lowrie as a party defendant also was addressed to the discretion of the judge to whom it was presented. It is to be noted that this motion contained numerous recitals necessarily at variance with facts which must have been found by one or more judges of the Superior Court before certain orders could have been made. The denial of this motion after hearing shows no error of law affecting the final decree. *Parsons* v. *Henry,* 197 Mass. 504, 511.

There was no error in refusing to the plaintiff the privilege of filing a supplemental bill. The proper office of such pleading is to support a cause of action existing when the original bill was

filed by facts occurring since the filing of the bill or coming to his knowledge subsequent thereto. The same matter under our practice may be pleaded by amendment. Equity Rule 25. *Malden & Melrose Gas Light Co.* v. *Chandler,* 220 Mass. 1, 9. *Bartlett* v. *New York, New Haven, & Hartford Railroad,* 226 Mass. 467, 471. *Pedrick* v. *White,* 1 Met. 76. Since there was no error in sustaining the demurrers, there was no error in refusing to allow the filing of the supplemental bill.

*Decree affirmed with costs.*